UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

BERNARD B. ABEL,                                    Decision & Order
                        Plaintiff,

    -against-
                                                    04 Civ. 7284(SCR)(MDF)
ROBERT A. MORABITO, et al.,

                        Defendants.
---------------------------------------------------------------x

MARK D. FOX, United States Magistrate Judge.

      Plaintiff is an editorial writer and columnist for the Westmore News, a local newspaper in which he has published columns on matters of public concern. The columns contain allegations and opinions critical of the Defendants, the Town of Rye, its Supervisor, Morabito, and members of the town council. Relying on 42 U.S.C. §1983, Plaintiff alleges that in response to his columns, which represent an exercise of the right to freedom of speech protected by the First Amendment, the defendants conspired with the town attorney to engage in retaliatory acts, which include litigation, interfering with dissemination of the newspaper, interfering with the tax status of his residence and failing to record a satisfaction of judgment. Judge Robinson referred this matter for general pretrial supervision by order dated March 15, 2005. Defendants have moved to disqualify Plaintiff's counsel, Jonathan Lovett, Esq., and the firm of which he is a partner, Lovett & Gould, Esqs. They allege that in the course of soliciting an opinion from Lovett concerning whether the articles were protected by the First Amendment, legal confidences were disclosed to him. In response to the motion papers, I held a hearing to take testimony from individuals allegedly involved in the communications. The following constitutes the Court's findings of fact and conclusions of law with respect to this motion.

.

At the outset, the Court observes that the timing of this motion requires the drawing of a negative inference with respect to its motivation. The action was filed in September 2004. In January 2005 Judge Robinson entered a scheduling order which required that all discovery be completed by June 15, 2005. Only after I had conferred with the attorneys on March 31, 2005, April 14, 2005, April 25, 2005 and April 28, 2005 and had ruled on the outstanding discovery issues and was about to set dates for depositions on May 15, 2005, Defendants announced their intention to raise this disqualification issue. The facts upon which the application is predicated are alleged to have occurred in July 2003. Delay in bringing an application to disqualify counsel, whether tactical or inadvertent, cannot defeat the motion because the basis for disqualification, if it exists, would be a breach of the Code of Professional Responsibility, a matter which implicates the public interest. *Morton-Norwich Products, Inc. v. International Salt Co.,* 195 U.S. P.Q. 641, 642 (N.D.N.Y. 1977) (citing cases) (1977 Westlaw 22725).

The Local Civil Rules of the U.S. District Court, Southern District of New York provide that the applicable rules of professional conduct are those of the New York Code of Professional Responsibility as interpreted and applied by the United States Supreme Court, the United States Court of Appeals for the Second Circuit, and this court. *Local Civil Rule 1.5(b)(5).*

> However, in a technical sense the only truly binding authority on disqualification issues is Circuit precedent, because our authority to disqualify an attorney stems from the Court's inherent supervisory authority to "preserve the integrity of the adversary process..." [*Board of Educ.]v. Nyquist,* 590 F.2d at 1246. Thus, although the various eithical codes that have been promulgated are highly persuasive authority, *see Gleason v. Zocco,* 941 F. Supp. 32, 35 (S.D.N.Y. 1996), our decision must ultimately be guided by the goal of a trial process that lacks any hint of a taint.

*Skidmore v. Warburg Dillon Read LLC*, No. 99 Civ. 10525 (NRB) (S.D.N.Y. May 11, 2001)

2

(2001 Westlaw 504876 at *2); *see Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

As Chief Judge Mukasey observed in his comprehensive discussion of the principles which govern disqualification motions in *Bennett Silvershein Associates v. Furman,* 776 F. Supp. 800, 802 (S.D.N.Y. 1991),

> Motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are "often interposed for tactical reasons" and result in unnecessary delay. United States Football League v. National Football League, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985) (collecting cases). The Second Circuit has "indeed been loathe to separate a client from his chosen attorney.... The delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance...." Bohack Corp. v. Gulf & Western Indus., Inc., 607 F.2d 258, 263 (2d Cir.1979). Thus, although doubts should be resolved in favor of disqualification, Cheng v. GAF Corp., 631 F.2d 1052, 1059 (2d Cir.1980), vacated on other grounds and remanded, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981), the party seeking disqualification must carry a "heavy burden," Vegetable Kingdom, Inc. v. Katzen, 653 F.Supp. 917, 922 (N.D.N.Y.1987), and must meet a "high standard of proof" before a lawyer is disqualified. Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir.1983) (citing Government of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir.1978)); Twin Laboratories, Inc. v. Weider Health & Fitness, 1989 WL 49368, at *4, 1989 U.S.Dist. LEXIS 4693, at 11 (S.D.N.Y. May 1989).

"The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990); *see Papyrus Technology Corp. v. New York Stock Exchange, Inc.*, 325 F. Supp.2d 270, 275 (S.D.N.Y. 2004).

Relying primarily on Canon 4 of the Model Code of Professional Responsibility, courts in this Circuit apply a three-part test to determine whether an attorney should be disqualified:

(1) is the moving party a former client of the adverse party's counsel; (2) is there a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit; and (3) did the attorney whose disqualification is sought have access to,

3

or was he likely to have had access to, relevant privileged information in the course of his prior representation of the client? *See, e.g., Hempstead Video, Inc., supra*, 409 F. 3d at 133; *Evans v. Artek Systems Corp.*, 715 F.2d 788, 719 (2d Cir.1983); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570-71 (2d Cir.1973). "When applying this test, courts must look with 'painstaking' care at the facts, *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955), so as to maintain a balance between a party's right to preferred counsel and the need to 'preserve the integrity of the adversary process.' Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir.1979). Cf. Emle, 478 F.2d at 564-65 (referring to the "need to maintain the public's trust in the integrity of the Bar"). *Bennett, supra,* 776 F.Supp. at 802-803.

The parties do not dispute that attorney Anthony M. Provenzano, on behalf of defendant Morabito, sent Lovett newspaper articles written by Plaintiff and published in the Westmore news. Morabito and the other defendants were of the opinion that the articles were defamatory and were seeking a legal remedy against Plaintiff. In an opinion letter, Lovett responded that the articles were protected by the First Amendment and therefore did not give rise to an actionable claim. Hearing Exh. 1. After submission of the motion papers and oral argument, I determined that a hearing was necessary to resolve a disagreement concerning the extent and substance of the contacts between Morabito and Lovett.

The witnesses' recollections of events diverged irreconcilably concerning whether Morabito had ever met with Lovett to discuss the articles. Morabito, who is a compliance officer with a Wall Street investment firm, testified that he had spoken with Lovett by phone in the spring of 2003 and then met with Lovett in person at Lovett's office on a date he could not specify. He admitted, however, that when he had checked his personal diary calendar for 2003, he did not find any listing

of a phone call or appointment with Lovett. (Tr. 20-21). In contrast, Lovett had neither spoken with Morabito nor met with him about the articles. Lovett produced his office master calendar and a print out of his palm pilot diary, both of which disclosed no appointment with Morabito. (Tr.66-68).

The protagonists also did not agree on what had accompanied the articles. In paragraph 12 of his affidavit in support of this motion, Morabito averred that Lovett had told him to prepare a confidential memorandum which specified the statements in the articles that Morabito claimed were false and libelous. At page 44 of his deposition Morabito changed the description of this document to a "cover memorandum", which he claims Provenzano forwarded to Lovett along with the articles. Provenzano, who I also find to be credible, denied sending Lovett anything other than copies of the articles. Lovett denied ever receiving such a memorandum, confidential or otherwise.

Morabito testified that he had seen a copy of Provenzano's letter to Lovett before it was mailed (Tr.27, 28). Provenzano stated that he did not believe that Morabito was ever shown a copy of that letter. (Tr.61).

Morabito insists that the copies of the articles sent to Lovett contained handwritten notes and comments concerning the contents. Lovett had no recollection "one way or the other", of seeing such notations.(Tr. 79). Although the content of the of the handwritten notations may be significant to disqualification, the copies of the articles, the material sent to Lovett, are not available. The articles were returned to Provenzano with Lovett's letter (Hearing .Ex 1), were thereafter hand delivered by Provenzano to Raymond L. Sculky, Morabito's confidential secretary (Tr. 19, 43, 60), and, despite an extensive search (Tr.19), were never seen again. Under these circumstances, given the heavy burden of the movants, the absence of the proof does not support an inference in favor of the movants and against Lovett. *Cf. Interpetrol Bermuda, LTD., v. Rosenwasser,* No. 86 Civ. 5631 (JFK) (S.D.N.Y.

Dec. 20, 1988) (1988 Westlaw 140801 at *3) (In a pre-retention situation such as here, this failure of proof is necessarily fatal to the disqualification motion.").

Production of copies of the material sent to Lovett would not change my conclusion. I credit Provenzano's testimony that he delivered the articles along with Lovett's letter to Sculky and I therefore find that Sculky also had access to the articles. The notations were the product of group discussions between Morabito and the other defendants. Those discussions occurred in the presence of Provenzano who was not acting as defendants' attorney. (Tr. 23, 29, 53, 54) (Morabito dep.at 20). Although Morabito recalls that Sculky, who is also not a party to this litigation, was present, (Tr. 24), Sculky denies having been present. (Tr. 45). This contradiction is not significant with respect to the reason for noting the group nature of the discussions which produced the notations. Even if the articles contained confidential margin notes protected by the attorney client privilege, the disclosure to Provenzano and Sculky effectuated a waiver of the privilege.

> Under New York law, the voluntary disclosure of a privileged communication to a third party waives the privilege. See National Education Training Group, Inc. v. Skillsoft Corp., No. M8-85, 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999). However, "New York courts have recognized a narrow exception to this rule where privileged communications are shared with the client's agent." Id. In order to come within this agency exception and avoid waiver, the party asserting the privilege must meet a two-pronged test. First, it must demonstrate that the client had a " 'reasonable expectation of confidentiality under the circumstances .' " Id. at *4 (quoting Osorio, 75 N.Y.2d at 84, 550 N.Y.S.2d at 615, 549 N.E.2d 1183). Though a formal agency relationship is not required, the relationship between the client and the third party must be sufficiently close that the client's subjective expectation of confidentiality is reasonable. See National Education Training Group, 1999 WL 378337, at *4. Second, the client "must establish that disclosure to a third party ... was necessary for the client to obtain informed legal advice." Id. (citations omitted). "[T]he 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." Id.

*Ross v. UKI Ltd.,* No. 02 Civ. 9297 (WHP (JCF) (S.D.N.Y. Jan. 15, 2004) (2004 Westlaw 67221 at *3).

While the record may substantiate that Morabito had a reasonable expectation of confidentiality

6

in making the disclosure to Provenzano and in giving Sculky the apparent authority, as his confidential secretary, to accept the documents from Provenzano, there is nothing in this record to establish that either disclosure was necessary to obtain legal advice.

Based upon my observations of the demeanor of the witnesses, and their consistency or lack thereof with other credible evidence, I credit Lovett's version of the events and facts relevant to the determination of this application. Accordingly, I apply those facts to the three part inquiry.

By rendering an opinion letter (Hg. Ex. 1) to Morabito in which he expressed a legal opinion about the articles at issue, Lovett was acting as an attorney, at least for that limited purpose. Since the opinion expressed by Lovett addressed the same articles which form the basis for Abel's First Amendment retaliation claim in the matter currently before the court, it can be said that there is a substantial relationship between the current and the prior representation. Lovett's access to the articles, however, was not access to privileged information.

While Morabito asserts that there were notations on those articles which are relevant to this action and privileged, he has provided no proof to support his assertion. The articles were lost after Provenzano delivered them to Morabito's confidential secretary at the town offices. No copies were kept before they were mailed to Lovett by Provenzano on Morabito's behalf, and no one provided the Court with any recollection of the substance of the contents of the alleged notations so that the Court could make a determination as to whether they were relevant and privileged or even whether they existed at all.

Accordingly, I have concluded that the defendants have not met their burden of demonstrating that Lovett was likely to have had access to relevant privileged information in the course of his prior representation. Lovett's continued representation of the Plaintiff in this matter will not result in a taint

to the underlying trial.

In support of their application Defendants also rely on Ethical Canon 9 which admonishes an attorney to avoid even the appearance of a professional impropriety. "....Canon 9 'should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules.'" *Bennet Silvershein Associates v. Furman, 776 F. Supp. 800, 806 ((S.D.N.Y. 1991) (citations omitted).* Because Defendants have failed to prove that the trial will be tainted the "appearance of impropriety is simply too tender a reed on which to rest a disqualification order except in the rarest of cases." *Leber Associates, LLC v. The Entertainment Group Fund, Inc.*, No. 00 Civ. 3759 (LTS) (MHD) (S.D.N.Y. Dec. 7, 2001) ( 2001 Westlaw 1568780 at *7). As Judge Dolinger found in *Leber,* this too is not "that rarest of cases."

Based on the foregoing, Defendants' application to disqualify Jonathan Lovett, Esq. from continuing to represent Plaintiff in this matter is denied.

So Ordered:
White Plains, New York
October 3 , 2005

Mark D. Fox, U.S. Magistrate Judge

Copies of this decision and order have been sent as follows:

by hand delivery: Honorable Stephen C. Robinson, U.S.D.J.

by e-mail notification:

Robert H. Cabble, Esq.
Kral, Clerkin, Redmond, Ryan, Perry & Girvan, LLP
Attorneys for Movant
69 East Jericho Turnpike
Mineola, New York 11501

Jonathan Lovettt, Esquire
Lovett & Gould, LLP
Attorney for Respondent
222 Bloomingdale Road
White Plains, New York 10605