UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERNARD ABEL,

                    Plaintiff,

      -against-

ROBERT A. MORABITO, individually,
JOHN P. WALTER, individually,
MICHELE MENDICINO, individually,
MICHAEL J. BORRELLI, individually,
DOMINICK LAGANA, individually, and
TOWN OF RYE, New York,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

04 Civ. 07284 (PGG)

PAUL G. GARDEPHE, U.S.D.J.

          In this action, Plaintiff Bernard Abel brings claims under 42 U.S.C. § 1983

against the Town of Rye, the town's elected supervisor (Defendant Morabito) and four

elected members of the town council (Defendants Walter, Daly, Borrelli and Lagana).

Plaintiff asserts that the defendants violated his rights under the First and Fourteenth

Amendments by authorizing a retaliatory lawsuit against him for unpaid property taxes

after he authored and published newspaper columns criticizing town officials.[1]  (Cmplt.

¶¶ 7-24)  Defendants have moved for summary judgment on both claims, arguing that

they are entitled to judgment as a matter of law on the merits and that the individual

---

[1] In the Complaint, Plaintiff alleges that Defendants engaged in a variety of retaliatory
conduct.  (Cmplt. ¶¶ 7-24)  However, in his memorandum of law opposing summary
judgment, Plaintiff focuses on a single allegedly retaliatory act – the town's lawsuit
against him for back taxes – as the action giving rise to his claims.  (Pltf. Br. at 12-16)
Plaintiff asserts that the other alleged conduct is relevant to show that Defendants had a
retaliatory motive in authorizing that suit.  (Id. at 9)  Therefore, the Court will not
consider whether any of the other conduct alleged by Plaintiff, standing alone, could
support a First Amendment or Fourteenth Amendment claim.

defendants are entitled to qualified immunity.  For the reasons set forth below,

Defendants' motion (Docket No. 23) is DENIED.

## DISCUSSION

Summary judgment is warranted if the moving party shows that "there is

no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  "A dispute about a 'genuine issue' exists for summary

judgment purposes where the evidence is such that a reasonable jury could decide in the

non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  The

Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally

be drawn, in favor of the party opposing summary judgment."  Cifra v. General Electric

Co., 252 F.3d 205, 216 (2d Cir. 2001).

## I.   FACTS

Plaintiff Bernard Abel was the author of a column called the "Town Crier"

in the Westmore News, a weekly newspaper that he founded.  (Pltf. Rule 56.1 Response

¶¶ 1-2)[2]  Defendant Morabito was Town Supervisor for the Town of Rye from 1994

through at least 2005.  (Pltf. Rule 56.1 Response ¶ 3; Morabito Dep. 6:14-17)

Defendants Walter, Daly, Borrelli and Lagana were the Town of Rye's town council

members from the mid- to late-1990s through at least 2004.  (See Pltf. Rule 56.1

Response ¶ 3; Walter Dep. 6:11-14 (member since approximately 1997); Daly Dep. 5:21-

23 (member since approximately 1995); Borrelli Dep. 6:19-21 (member since

approximately 1998); Lagana Dep. 5:16-18 (member since approximately 1996).)

_____

[2] Unless otherwise noted, the cited paragraphs of Plaintiff's Rule 56.1 Response are
paragraphs in which Plaintiff admitted the facts that Defendants characterized as
undisputed in the correspondingly numbered paragraph of their Rule 56.1 Statement.

This lawsuit concerns Defendants' alleged reaction to the "Town Crier" columns that Plaintiff wrote in 2003 and 2004.  The columns undisputedly portray the defendants in a negative light.  Defendants characterize the columns as "critical of the individual defendants in the manner that they conducted their governmental duties." (Def. Rule 56.1 Statement ¶ 2)  Plaintiff characterizes them as expressing his opinions regarding "matters of public concern including corruption, municipal corporate stupidity, incompetence, nonfeasance, and malfeasance" by the individual defendants.  (Pltf. Rule 56.1 Response ¶ 2)

The conduct most directly at issue here is Defendants' authorization of a suit for back taxes against Plaintiff.  In 2004, the Town Assessor, Mitchell Markowitz, made a presentation to the Town Council concerning Plaintiff's property tax exemption. (Pltf. Rule 56.1 Response ¶ 31)  Since late 2002, Markowitz had been in communication with the assessor's office in Broward County, Florida concerning Plaintiff's Florida property tax exemption, and those communications had raised questions about whether Plaintiff had improperly claimed residents' exemptions in both Florida and New York. (Pltf. Rule 56.1 Response ¶¶ 22-25, 30)  During Defendants' tenure as town officials, the town had never previously sued a property owner for back taxes.  (September 26, 2006 Aff. of Bernard Abel ¶ 5; Morabito Dep. 25:5-14; Walter Dep. 19:13-20)  However, after Markowitz's presentation, the individual defendants voted unanimously in an executive session of the Town Council to commence a suit for back taxes against Plaintiff.  (Pltf. Rule 56.1 Response ¶ 34; Daly Dep. 7:4-20)  The suit was commenced in July 2004. (Abel Aff. ¶ 3)

After the lawsuit was filed, it appears that Plaintiff wrote only one additional "Town Crier" column, which was published on September 10, 2004.  (Id. ¶ 6)  Three days later, Plaintiff commenced this action, in which he asserts that the suit for back taxes was filed in retaliation for his "Town Crier" columns and in violation of his First Amendment and Fourteenth Amendment rights.

## II.    PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

In order to prevail on his First Amendment retaliation claim, Plaintiff "must prove [that]:  (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  Defendants argue that Plaintiff cannot establish the second or third elements of his claim.  (Def. Br. at 2, 9-10) However, Plaintiff has met his burden of offering sufficient evidence for a jury to find in his favor on both elements.[3]

---

[3] Plaintiff has argued that he need not show the third element of the Curley test – i.e., that Defendants' actions effectively chilled the exercise of his First Amendment rights.  (Pltf. Br. at 12)  However, while the Second Circuit has not "impose[d] an actual chill requirement for First Amendment retaliation claims" in all cases "involving criticism of public officials by private citizens," Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004), it has clearly done so where, as here, the alleged retaliatory conduct is the filing of a lawsuit.  See Spear v. Town of West Hartford, 954 F.2d 63, 67 (2d Cir. 1992) (in case where plaintiff asserted that defendants' filing of a lawsuit violated his First Amendment rights, holding that plaintiff's "naked assertion of a chill" was insufficient to state a retaliation claim in the absence of allegations that, for example, "he had declined to write further anti-abortion editorials" or "had toned down his writing on the subject").

A.     **A Reasonable Jury Could Find that**
       **Plaintiff Has Satisfied the**
       <u>**Second Element of the *Curley* Test**</u>

To show that Defendants' decision to file the suit for back taxes was

"motivated or substantially caused by his exercise of [his First Amendment rights],"

Plaintiff must provide "[s]pecific proof of improper motivation." <u>Curley</u>, 268 F.3d at 73.

Circumstantial evidence such as temporal proximity between Plaintiff's speech and the

act in question, or direct evidence such as comments by the defendants, may suffice to

meet this burden. <u>Webster v. City of New York</u>, 333 F. Supp. 2d 184, 202 (S.D.N.Y.

2004). Here, Plaintiff has offered sufficient evidence from which a jury could conclude

that Defendants' authorization and initiation of the back taxes lawsuit was motivated by a

desire to retaliate against Plaintiff because of his "Town Crier" columns.

The temporal proximity between Plaintiff's publication of the "Town

Crier" columns and the filing of the lawsuit is circumstantial evidence of Defendants'

alleged improper motive. Plaintiff published his columns from 2003 through September

10, 2004. (Pltf. Rule 56.1 Stat. ¶¶ 2, 60) The alleged retaliatory conduct occurred toward

the end of this time period: the individual defendants voted to commence the tax suit in

April or May 2004, and the Town filed suit in July 2004. (Cabble Aff. ¶ 85; Pltf. Rule

56.1 Stat. ¶¶ 45, 60; Cmplt. ¶ 16)

In addition, Plaintiff has offered direct evidence of Defendants' alleged

improper motive, in the form of testimony that Defendants were unhappy with Plaintiff's

columns and wanted them to stop. It is undisputed, for example, that in the spring of

2003, Defendants Morabito, Borrelli and Lagana discussed suing Plaintiff for libel based

on his "Town Crier" columns. (Pltf. Rule 56.1 Response ¶ 7) Anthony Provenzano, who

was present when these defendants discussed suing Plaintiff, summarized the

"consensus" of the defendants at that meeting as being that "[t]he articles were not true, and there should be some action taken to stop [Plaintiff] from doing that."  (Provenzano Dep. 12:21-13-22)  There is likewise evidence that the entire town council discussed suing Plaintiff for libel during a council meeting in mid-2003.  (Walter Dep. 8:5-10:6; Daly Dep. 20:25-20, 25:2-5 (testifying that Defendant Morabito said he was "not happy" with Plaintiff's columns because they were not true, and that all of the defendants expressed the view that the columns were not true)).  Moreover, Plaintiff testified that the town attorney, Mann, told him in Defendant Morabito's office that, "If you don't stop, we're going to get you."  (Abel Dep. 27:19-22)  Plaintiff also testified that the town chairman of the Democratic Party, to which at least three of the defendants belonged, asked whether Plaintiff would "stop writing if they reduced . . . [his] taxes. . . ."  (Id. 100:15-18; see also Morabito Dep. 17:11-23 (explaining that Morabito's 2003 campaign expenses were paid for by the Rye Town Democratic Committee); id. at 7:7-10 (noting that in 2003, Morabito, Lagana and Borrelli ran on the same ticket))

Moreover, it is undisputed that during the individual defendants' tenure on the town council, Plaintiff was the only resident they decided to sue for back taxes, although hundreds of other residents had had similar improper tax exemptions.  (See also Pltf. Rule 56.1 Stat. ¶¶ 47-48, 52-54, 56-57; Cabble Aff. ¶¶ 175-182 (citing Markowitz's deposition testimony); Morabito Dep. 43:3-44:2)  The Second Circuit has recognized that "circumstances suggesting in a substantial fashion that the plaintiff has been singled out" may be evidence of improper retaliatory motive.  Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995).

Plaintiff has also offered evidence suggesting that Defendants did not have a legitimate reason to sue him, which could further support an inference that their true motivation was improper.  See Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency, 77 F.3d 26, 31 & n.5 (2d Cir. 1996) (identifying frivolity of claims as one issue that could be relevant to plaintiff's proof of his First Amendment retaliatory litigation claim).  Plaintiff testified that before the property tax lawsuit was filed, he discussed the tax issue with the town assessor, Markowitz, who told him that he disagreed with Mann's assertion that Abel was not a New York resident (which was a predicate for the suit), and also said that "he didn't want to get involved in the middle of all this."  (Abel Dep. 103:17-104:19, 104:24-105:2)  Markowitz corroborated this testimony, agreeing that he told Abel that he did not want to be involved in a lawsuit about back taxes because in his opinion it was "political in nature."  (Markowitz Dep. 67:15-68:5)[4]

---

[4] Defendants argue that these statements are inadmissible (1) under F.R.E. 701 because they constitute lay witness opinion testimony, and (2) because Markowitz is not competent to testify about the individual defendants' state of mind.  (Def. Reply Br. at 6)  Neither argument is well-founded.  Markowitz testified about his own evaluation as to whether Plaintiff was a New York resident and about his own reluctance to get involved in a litigation that he perceived as "political in nature."  His testimony does not address what the defendants were thinking.  Moreover, because Markowitz was the Town Assessor and responsible for tax exemptions, he is obviously qualified to comment on the merits of the dispute, particularly when Defendants have claimed (Def. Br. at 14-16) that they had a legitimate basis for bringing the suit.  Markowitz's testimony would clearly be admissible, at least as to the Town, as an admission under F.R.E. 801(d)(2)(D) ("a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship").  Finally, even if the jury were not entitled to consider this testimony as to the individual defendants, there is sufficient additional evidence from which it could find that Defendants were motivated by Plaintiff's exercise of his First Amendment rights.

Drawing all inferences in Plaintiff's favor, as the Court must do at this juncture, a reasonable jury could find that Defendants authorized the tax suit in retaliation for Plaintiff's exercise of his First Amendment rights based on (1) the temporal proximity between the protected speech and the alleged retaliatory conduct; and (2) evidence suggesting that Defendants (a) wanted to stop Plaintiff's columns, (b) singled him out for a back taxes lawsuit, and (c) may not have had a legitimate reason to sue him at all.

Defendants argue that Plaintiff nonetheless cannot establish the second Curley element because they in fact had a legitimate reason for suing him.  However, as described above, Plaintiff's evidence creates a genuine factual dispute as to that issue, which in itself is enough to defeat a summary judgment motion.  Moreover, where, as here, there is evidence that an "impermissible reason [i.e., retaliation] was at least part of . . . [the defendants'] basis for [their] action," the defendants are not entitled to summary judgment unless they can show that they would "have taken the same adverse action even if the impermissible reason had not existed."  Greenwich Citizens Committee, 77 F.3d at 31; see also Webster, 333 F. Supp. 2d at 201 (if the plaintiff provides evidence of an improper reason for the defendant's conduct, "the defendant must show by a preponderance of the evidence that the defendant's conduct would have been the same 'even in the absence of the protected conduct'").  Defendants have not even attempted to make such a showing here.  Therefore, Defendants have not shown that they are entitled to judgment as a matter of law on this issue.

**B.    A Reasonable Jury Could Find that Plaintiff Has Satisfied the Third Element of the *Curley* Test**

To determine whether a plaintiff has offered sufficient evidence to establish the third element of the Curley test, courts look to whether there is evidence that

the plaintiff's behavior changed after the alleged retaliatory act.  See, e.g., Curley, 268 F.3d at 73 (plaintiff could not establish "chill" element where there was "no change in his behavior"); New England Health Care, Employees Union, Dist. 1199, SEIU/AFL-CIO v. Rowland, 221 F. Supp. 2d 297, 343 (D. Conn. 2002) ("If the plaintiff continues to engage in the protected speech that allegedly motivated unconstitutional retaliation, then it failed to established an actual chilling of its speech.").

Here, the only evidence concerning Plaintiff's behavior after the Town initiated the tax suit is that he published a single farewell column approximately two months later, on September 10, 2004.  (Abel Aff. ¶¶ 3, 6)  Plaintiff has offered affidavit testimony that he stopped writing the column because of the tax suit.  (Id. ¶ 5 ("due to the harassment I sustained at the hands of Town officials, including but not limited to the Town's commencement of the . . . action against me to recover back taxes . . . I ceased writing my column 'Town Crier' in the Westmore News"))  Although the evidence on this issue is sparse, a jury could reasonably find that Plaintiff's behavior did in fact change due to Defendants' initiation of the tax suit, and that Defendants' conduct therefore chilled Plaintiff's exercise of his First Amendment rights.  Cf. Spear v. Town of West Hartford, 954 F.2d 63, 67 (2d Cir. 1992) (suggesting that plaintiff could meet the "chill" requirement by showing either that "he had declined to write further . . . editorials" on the subject at issue or "had toned down his writing on the subject").

III.     **PLAINTIFF'S EQUAL PROTECTION CLAIM**

Plaintiff also asserts that Defendants' conduct gives rise to a Fourteenth Amendment selective enforcement claim.  To prevail on this claim, Plaintiff must show: "(1) that . . . [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race,

religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation omitted).  Defendants argue that Plaintiff cannot establish the first element of this claim.  (Def. Br. at 17-18)[5]

   To establish the first element, Plaintiff must show that:  (1) "the persons to whom . . . [he] compares himself . . . [are] 'similarly situated in all material respects,'" Estate of Morris v. Dapolito, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004); and (2) that Defendants knew there were similarly situated individuals and "consciously applied a different standard" to Plaintiff, LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999).  As with Plaintiff's First Amendment claim, although Plaintiff's evidence is relatively thin, it is sufficient for a jury to find in his favor.

---

[5] Defendants make two additional arguments that are meritless because they are based on mischaracterizations of the Complaint.  First, Defendants argue that Plaintiff is attempting to assert a Fourteenth Amendment retaliation claim, which the Second Circuit does not recognize.  However, Plaintiff is clearly asserting a selective enforcement claim (see Cmplt. ¶¶ 29-30; Pltf. Br. at 15 (citing selective enforcement test)), and in cases where the plaintiff has asserted First Amendment retaliation and Fourteenth Amendment selective enforcement claims arising from the same facts, the Second Circuit has considered both claims.  See, e.g., Cobb v. Pozzi, 363 F.3d 89 (2d Cir. 2004); African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355 (2d Cir. 2002); Brady v. Town of Colchester, 863 F.2d 205, 216-17 (2d Cir. 1988).  Second, Defendants argue that Plaintiff "has not alleged that he was discriminated against . . . to prevent him from exercising a constitutional right," and must therefore prove that Defendants were "motivated by malicious or bad faith intent."  (Def. Br. at 20)  However, Plaintiff clearly asserts that Defendants were motivated by a desire to prevent him from exercising his First Amendment rights.  (Cmplt. ¶¶ 16-17; Pltf. Br. at 15)  Further, he has offered evidence from which a jury could find in his favor on this element.  (See supra p. 5-8.)

### A.     Plaintiff Has Offered Evidence From Which a Jury Could Find That Similarly Situated Individuals Existed and Were Treated Differently

The undisputed evidence shows that Plaintiff was the only person sued by the Town of Rye for property taxes during the period when Defendants controlled the town government.  (See, e.g., Morabito Dep. 25:5-14 (acknowledging that the suit against Abel was the only suit for back taxes that he voted on in his 10-year tenure as town supervisor); Walter Dep. 19:13-20 (testifying that through the day of his deposition, the suit against Abel was the only suit for back taxes he was aware of in his 9.5 years on the town council).)   Based on this evidence, a jury could reasonably find that Plaintiff was treated differently from any other resident who may have owed back taxes.

To show that such individuals did exist, Plaintiff must identify comparators whom a "prudent person would think . . . [were] roughly equivalent." Estate of Morris, 297 F. Supp. 2d at 686 (internal citations omitted).  Plaintiff need not show an "exact correlation" between himself and the comparators.  Id. (internal citations omitted). See also Penlyn Dev. Corp. v. Inc. Vill. of Lloyd Harbor, 51 F.Supp.2d 255, 264 (E.D.N.Y.1999) ("The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent.  Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples." (internal citations omitted)).[6]

_____

[6] Defendants argue that to show that a comparator is similarly situated, Plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008).  However, as the Neilson court explicitly noted, its definition of "similarly situated" is "simply an adaptation of the rational review standard applicable to equal

Here, the evidence is sufficient for a jury to find that similarly situated individuals existed.  Defendant Morabito, the town supervisor, testified that a tax reevaluation conducted in 2003 and 2004 "cleaned up and brought forth numerous situations similar to . . . [Abel's]" and that other action based on this information had been "anticipated."  (Morabito Dep. 25:5-26:17)  He further testified that the town assessor, Markowitz, told Morabito "that there's probably upwards of a dozen [individuals] that we need to take action against [due to improper exemptions]," and that Morabito told Markowitz to "put [them] on hold" "[b]ecause we are in litigation . . . with Mr. Abel."  (Id. 28:2-14)  Morabito also testified that Markowitz had resolved "hundreds" of exemption issues administratively but could not handle the remaining dozen the same way (id. 43:3-44:2), and Morabito later described those dozen cases as ones where the town "would have to file suit."  (Id. 50:23-51:4)  A jury could reasonably infer from this testimony that there were approximately a dozen individuals who were similar "in all material respects" to Plaintiff – i.e., they were at least "roughly equivalent," Estate of Morris, 297 F. Supp. 2d at 686 – because their situations allegedly warranted the Town suing them over a property tax exemption.

Defendants attempt to show that they are entitled to judgment as a matter of law on this issue by presenting facts concerning alleged differences between Plaintiff and the other individuals who had questionable or incorrect tax exemptions.  (Def. Br. at

---

protection 'class of one' cases."  Neilson, 409 F.3d at 105 n.2.  The rational review standard does not apply in this case.  See id. (citing Weinstein v. Albright, 261 F.3d 127, 140 (2d Cir. 2001), as holding that that "rational basis review applies to equal protection claims not based on plaintiff's membership in a suspect class or on effects of the challenged action on fundamental rights" (emphasis added)).  Therefore, the Neilson definition of "similarly situated" is also inapplicable here.

19-20; Def. Reply Br. at 8-9)  However, Defendants' evidence merely creates a factual dispute for the jury.  It does not show that Defendants are entitled to judgment as a matter of law.  See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007) (in selective enforcement case, "[g]enerally, whether two . . . [comparators] are similarly situated is a factual issue that should be submitted to the jury"); see also Harlen, 273 F.3d at 499 n.2 (same).

### B.   Evidence that Defendants Knew of the Similarly Situated Individuals

To establish the first element of his selective enforcement claim, Plaintiff must also offer evidence showing either that Defendants had knowledge of the similarly situated individuals at the time they decided to sue him, or that they lacked that knowledge due to a "see-no-evil policy of not enforcing" the Town's right to collect back taxes, which they "then abandoned . . . with respect to a violator engaged in protected activity."  LaTrieste, 188 F.3d at 70 n.1.

Plaintiff has not offered any evidence that the individual defendants – except perhaps Defendant Morabito – had the requisite knowledge at the time they voted to sue him, and Defendants have offered affirmative evidence to the contrary.[7]  However, a jury could reasonably find that the defendants, as long-serving council members, knew

---

[7] Defendant Walter testified that on the day Markowitz presented the town council with information about Plaintiff's alleged dual residency and improper tax exemptions, Markowitz did not discuss any other taxpayers.  (Walter Dep. 17:21-18:10)  Walter testified that he did not learn of the existence of taxpayers who were arguably similarly situated until the day of his deposition (January 16, 2006).  (Id. 18:23-19:3)  Plaintiff asserts that Defendant Daly's testimony contradicts Walter's testimony (see Pltf. Rule 56.1 Response ¶ 35), but while Daly testified that Markowitz told the council about others with unwarranted tax exemptions, the entirety of her testimony makes clear that she believed this conversation took place after the council voted to sue Plaintiff for back taxes.  (Daly Dep. 27:2-24, 28:10-13)

they were taking unprecedented action when they voted to sue Plaintiff.  Further, there is

evidence that before voting to sue Plaintiff, Defendants confirmed that their action was

unprecedented by asking the town assessor whether anyone else had been sued in similar

circumstances in the past (Lagana Dep. 17:18-24), but failed to ask whether there were

any other individuals who were then similarly situated to Plaintiff.[8]  Based on these facts,

a reasonable jury could conclude that Defendants' lack of knowledge was due to a "see-

no-evil policy."

## IV.   QUALIFIED IMMUNITY

Having found that Defendants are not entitled to judgment as a matter of

law on the merits of Plaintiff's claims, the Court must determine whether the individual

defendants are nonetheless entitled to judgment as a matter of law because they are

entitled to qualified immunity.[9]  In order to make that determination, the Court must:  (1)

"determine whether . . . [Plaintiff] has alleged a violation of a constitutional right;" (2)

"consider if the violated right was clearly established at the time of the conduct;" and (3)

if the first two factors are met, decide whether Plaintiff has "demonstrate[d] that

---

[8] Defendant Walter testified that neither he nor anyone else at the meeting asked whether "other people ha[d] done the same thing."  (Walter Dep. 18:11-15)  Defendant Lagana similarly testified that at that meeting, Markowitz only discussed Plaintiff, and he could not recall anyone asking about others with illegal exemptions.  (Lagana Dep. 11:3-12)  If Defendants had inquired about others, there is evidence that Markowitz would have been able to answer the question.  Markowitz testified that he compiled information about other taxpayers who were similarly situated to Plaintiff during the same time period that the tax re-evaluation was conducted – i.e., during late 2003 and early 2004.  (Markowitz Dep. 27:3-23)

[9] The qualified immunity defense is available only to the individual defendants and not to the Town of Rye.  Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008) ("[U]nlike individual defendants, a municipality may not assert qualified immunity based on its good faith belief that its actions or policies are constitutional.").

[D]efendants' actions were not objectively reasonable."  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003).  Here, Defendants do not contest that Plaintiff has alleged a violation of constitutional rights.  However, they argue that the law concerning the rights at issue was not clearly established at the time of the conduct and that, as a matter of law, their actions were objectively reasonable.

Contrary to Defendants' argument, the law with respect to both of Plaintiff's claims was clearly established in 2004.  Defendants' sole argument with respect to Plaintiff's Fourteenth Amendment claim is that "there was no clearly recognized right to be free from retaliation under the Equal Protection Clause."  (Def. Br. at 18)  However, as discussed above, the question is whether Plaintiff had a right to be free from selective enforcement of the law in retaliation for the exercise of First Amendment rights.  The Second Circuit had clearly recognized that right as of 2004. See, e.g., supra pp. 10-11 & n.5 (citing pre-2004 cases).  Indeed, Defendants do not argue that the law with respect to this right was not clearly established by 2004.

With respect to Plaintiff's First Amendment claim, Defendants argue that the Second Circuit itself recognized a lack of clarity in the law in 1998 when it stated, in Smith v. Garretto, 147 F.3d 91 (2d Cir. 1998), that "[w]ith retaliatory lawsuits, at least in the civil context, a showing that the retaliatory suit is frivolous seems to be required."  Id. at 95 (emphasis added) citing Greenwich Citizens Committee, 77 F.3d at 31 & n.5.  (Def. Br. at 13-14)  However, a later Second Circuit decision clarified this issue prior to 2004. In Gorman-Bakos v. Cornell Co-op Extension of Schenectady, 252 F.3d 545 (2d Cir. 2001), the Second Circuit described its 1996 decision in Greenwich Citizens Committee as holding that:

> the constitutionality of the government's filing of counterclaims . . . turned
> solely on whether the government would have filed the counterclaims in
> the absence of an impermissible punitive or retaliatory reason. . . . Where
> the routine conduct of litigation could justify the response, we held the
> government would be entitled to take action . . . unless the government
> acted in order to retaliate.  Id. at 556 (emphasis added).

Thus, in Gorman-Bakos, the Second Circuit made clear that even non-frivolous litigation

may be unconstitutional if it is motivated by retaliatory intent.[10]  Based on Greenwich

Citizens Committee and Gorman-Bakos, reasonable government officials deciding

whether to authorize litigation against a private citizen in 2004 would have understood

that even if the litigation was not frivolous, their conduct would be unlawful if they

would not have taken such action absent a retaliatory motive.  Thus, the relevant law was

clear when the Defendants authorized the suit against Plaintiff in 2004.  See Higazy v.

Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (where the right asserted by the plaintiff

clearly existed under applicable law, the question is "whether under preexisting law a

reasonable defendant official would have understood that his or her acts were unlawful").

Defendants would still be entitled to qualified immunity if the Court could

find in their favor on the third factor, which is whether Plaintiff has "demonstrate[d] that

[D]efendants' actions were not objectively reasonable."  Harhay, 323 F.3d at 211.

---

[10] It is also worth noting that the Garetto excerpt relied on by Defendants is a passing
observation – not a holding – that is not supported by the cases it cites.  The cases cited in
Garetto merely stand for the proposition that an improper motive might reasonably be
inferred from the assertion of frivolous claims – these cases do not indicate that a plaintiff
must prove that the allegedly retaliatory litigation was frivolous.  See Greenwich Citizens
Committee, 77 F.3d at 31 & n.5 (stating in a footnote that "[a]mong the issues that the
Greenwich plaintiffs might litigate in attempting to prove retaliation are . . . whether the
counterclaims were frivolous" (emphasis added)); Harrison v. Springdale Water & Sewer
Commission, 780 F.3d 1422, 1428 (8th Cir. 1986) (noting that plaintiffs had alleged that
the counterclaims at issue were frivolous in holding that the plaintiffs had stated a claim
for violation of their First Amendment rights with respect to the defendants' alleged acts
in pressuring them to settle a lawsuit).

However, the Court cannot do so here.  In a case "where . . . specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law."  Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001).  Therefore, "in an action in which . . . an unconstitutional subjective intent is alleged," the plaintiff can defeat a summary judgment motion on the issue of qualified immunity by "proffer[ing] particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive."  Sheppard v. Beerman, 94 F.3d 823, 828 (2d Cir. 1996) (applying rule in First Amendment retaliation case); see also Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003) (summary judgment on qualified immunity was inappropriate where "retaliatory intent is an element of plaintiff's claim" and "plaintiff's evidence of retaliatory animus is sufficient to make defendants' motivation a triable issue of fact").  Here, the Court has already found that Plaintiff has offered sufficient evidence of Defendants' improper motive to withstand summary judgment on both of his claims.  (See supra pp. 5-8, 12-13.)  Therefore, the individual defendants have not shown an entitlement to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 23) is DENIED.

Dated: New York, New York      SO ORDERED.
      February 9, 2009

Paul G. Gardephe
United States District Judge

17